# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FRANCESCA COLELLA and )
SHENOUDA ROFAEIL, )
)
    Plaintiffs, )
)
       v. )    C.A. No. N17C-11-195 FWW
)
GGP, INC., CHRISTIANA MALL, )
LLC, UNIVERSAL PROTECTION )
SERVICE, LLC, CHARLEY'S )
GRILLED SUBS, CHARLEY'S )
STEAKERY, INC., GOSH )
ENTERPRISES, INC., POPE )
SHENOUDA AND EVA HEDRA, LLC, )
AMGAD ATTALLA, SEIFEDDINE )
GMAR, JADA COVERDALE, and )
CARDELL TARLTON, )
)
    Defendants. )

Submitted: May 7, 2021
Decided: August 18, 2021

*Upon the Motion for Summary Judgment of Defendants Pope Shenouda and Eva Hedra, LLC, Charley's Philly Steaks, Charley's Grilled Subs, Charley's Steakery, Inc., Gosh Enterprises, Inc., and Amgad Attalla,*

**GRANTED.**

## ORDER

Jason D. Warren, Esquire, Shelsby & Leoni, 221 Main Street, Wilmington, DE 19804, Attorney for Plaintiffs Francesca Colella and Shenouda Rofaeil.

Thomas J. Gerard, Esquire, Marshall, Dennehey, Warner, Coleman, & Goggin, 1007 N. Orange St., Suite 600, P.O. Box 8888, Wilmington, DE 19899, Attorney for Defendants Pope Shenouda and Eva Hedra, LLC, Charley's Philly Steaks, Charley's Grilled Subs, Charley's Steakery, Inc., Gosh Enterprises, Inc., and Amgad Attalla.

Seifeddine Gmar, *pro se,* 4525 Emerson Park Drive #18-B-113, Orlando, FL 32839.

**WHARTON, J.**

This 18th day of August, 2021, upon consideration of the Motion for Summary Judgment ("Motion") of Defendants Pope Shenouda and Eva Hedra, LLC, Charley's Philly Steaks, Charley's Grilled Subs, Charley's Steakery, Inc., Gosh Enterprises, Inc., and Amgad Attalla[1] ("Moving Defendants" or "Charley's Steaks"), the Response of Plaintiffs Francesca Colella and Shenouda Rofaeil ("Plaintiffs"),[2] and the record in this case, it appears to the Court that:

1. Before the Court is Moving Defendants' Motion for Summary Judgment. This action originated from Plaintiffs filing a complaint alleging they sustained injuries when several employees from the "Charley's Steaks" food business at the Christiana Mall—Jada Coverdale ("Coverdale"), Cardell Talton ("Talton"), and Seifeddine Gmar ("Gmar")—forced Plaintiffs from their vehicle and assaulted them.[3] Moving Defendants answered. Plaintiffs then moved for default judgments against Defendants Talton,[4] Coverdale,[5] and Gmar.[6] Ultimately, default judgments were entered against Defendants Coverdale and Talton.[7] After engaging in discovery, Moving Defendants then filed this Motion.[8]

---

[1] Defs.' Mot. for Summ. J., D.I. 120.
[2] Pls.' Resp. to Mot. for Summ. J., D.I. 127.
[3] Compl., D.I. 1.
[4] Mot. for Default J., D.I. 35.
[5] Mot. for Default J., D.I. 36.
[6] Mot. for Default J., D.I. 37.
[7] Order, D.I. 65, 66.
[8] Defs.' Mot. for Summ. J., D.I. 120.

2.      Plaintiffs' claims stem from an altercation in the Christiana Mall parking lot on November 21, 2015.[9] The incident, according to deposition testimony and the record, occurred when Plaintiff Colella arranged to pick up a camera from her recently estranged husband Defendant Gmar.[10] Plaintiff Rofaeil met Plaintiff Colella, whom he had recently begun dating, and together they walked up to Gmar, where he was working as a manager at "Charley's Steaks". Plaintiffs obtained the camera from Gmar, and, after the men exchanged some derogatory comments in Arabic, left the mall to walk to their car in the parking lot.[11] Upon reaching their car and discussing their plans, Gmar appeared at the passenger side window and knocked on the car window. Plaintiffs got out of their vehicle and were allegedly assaulted by multiple employees of "Charley's Steaks".[12] Plaintiffs seek general, special, and punitive damages for their injuries from Defendants Gmar, Coverdale and Talton. They also seek damages from Moving Defendants.[13] Specifically, Plaintiffs allege that Moving Defendants, who were not participants in the altercation, are liable for damages under three theories – vicarious liability, negligent

---

[9] Pls.' Compl., D.I. 1.

[10] Pls.' Resp. to Defs.' Mot. for Summ. J., Ex. A, D.I. 127.

[11] *Id.*

[12] *Id.* There appears to be a dispute as to how the altercation began. In their motion for summary judgment, Moving Defendants cite the Christiana Mall's incident report which describes that Plaintiff Colella "incited a physical altercation between her husband and her current boyfriend." Defs.' Mot. for Summ. J. at 3, D.I. 120.

[13] Pls.' Compl., D.I. 1.

hiring and supervision, premises liability. Plaintiffs allege that Moving Defendants breached their duties to prevent their employees from assaulting business invitees, and to maintain security and supervise, monitor, train and/or instruct their employees in such a way as to protect the public from unreasonable harm.[14] Plaintiffs allege Moving Defendants breached those duties through their negligence, gross negligence, and willful wanton and reckless behavior in hiring, training and supervising their employees, who they allege were acting within their within the scope of their employment when they in assaulted the Plaintiffs.[15]

3. On April 12, 2021, Moving Defendants moved for summary judgment.[16] Moving Defendants assert that Plaintiffs' claim against them, predicated on a vicarious liability theory, fails under Restatement (Second) of Agency § 228.[17] Moving Defendants argue that there is no genuine dispute that Defendants Gmar, Coverdale, and Talton were not acting within the scope of their employment when they participated in what amounted to a domestic dispute in the Christiana Mall parking lot.[18] Next, Moving Defendants assert that Plaintiffs' claim for negligent hiring and supervision fails because Plaintiffs have presented no evidence that Moving Defendants were on notice that Defendants Gmar, Coverdale,

---

[14] *Id.*

[15] *Id.*

[16] Defs.' Mot. for Summ. J., D.I. 120.

[17] *Id.* at 5-7.

[18] *Id.*

5

and Talton's posed a risk of tortious behavior at the time they were hired or thereafter.[19] Moving Defendants then argue that Plaintiffs' claim for premises liability for injuries to business invitees fails because, quite simply, Plaintiffs were not injured on Moving Defendants' premises. Plaintiffs were injured in the Christiana Mall parking lot, premises owned by the mall itself. Moving Defendants argue that Plaintiffs' injuries did not occur at "Charley's Steaks" and, furthermore, the tortious acts were not foreseeable.[20] Finally, Moving Defendants assert that Plaintiffs remaining claims for negligence must be dismissed.[21] Moving Defendants argue that Plaintiffs have provided no evidence to support an argument that a genuine issue of material fact exists that Moving Defendants engaged in negligence, gross negligence, and reckless, or willful and wanton acts.[22]

4.      Plaintiffs oppose the motion, arguing that genuine issues of material fact do exist.[23] Specifically, Plaintiffs argue that Defendant Gmar was acting within the scope of his employment when he permitted or instigated Defendants Coverdale and Talton to attack Plaintiffs in the parking lot.[24] In support of their contention that Defendant Gmar was acting within the scope of his employment, Plaintiffs point to

---

[19] *Id.* at 8.
[20] *Id.* at 8-11.
[21] *Id.* at 11-13.
[22] *Id.*
[23] Pls.' Resp. to Defs.' Mot. for Summ. J., D.I 127.
[24] *Id.*

6

Defendant Gmar *pro se* answers to the complaint to that effect.[25] Plaintiffs assert "Charley's Steaks" had a non-delegable duty to protect Plaintiffs, as business invitees, and that Defendant Gmar's position as manager aided in the assault.[26] Next, Plaintiffs argue that the negligent supervision claim has genuine issues of material fact remaining in that a jury could find Defendant Gmar, as acting manager during the incident, was negligent in his supervision when he permitted or instigated Defendants Coverdale and Talton to assault Plaintiffs.[27] Plaintiffs then argue that the premises liability claim should not be dismissed because the authority cited by Moving Defendants is distinguishable.[28] They do not address Moving Defendants' argument that the incident did not occur on Moving Defendants' property. Lastly, Plaintiffs assert that Moving Defendants' have provided no evidence or reasoning that Moving Defendants' actions were not grossly negligent, reckless, or willful and wanton acts.[29]

5. Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if, when "there is no genuine issue as to any material fact and that the

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 7.
[28] *Id.* at 8.
[29] *Id.*

7

moving party is entitled to a judgment as a matter of law."[30]  The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[31]  If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact the ultimate fact-finder must resolve.[32]  When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[33]  Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact.  When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[34]  However, when the facts permit a reasonable person to draw but one inference, the question becomes

---

[30] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979)).

[31] *Sizemore*, 405 A.2d at 681.

[32] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[33] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[34] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

one for decision as a matter of law.[35]  After careful consideration of the parties

arguments, it is apparent to the Court that no genuine issues of material fact exist

and Moving Defendants are entitled to judgment as a matter of law.  Accordingly,

Moving Defendants' Motion for Summary Judgment is **GRANTED**.

7.    Turning first to the question of vicarious liability, "[L]iability for the

torts of the servant is imposed upon the master only when those torts are committed

by the servant within the scope of his employment which, theoretically at least,

means that they were committed in furtherance of the master's business."[36]  "Section

228 [of the Restatement (Second) of Agency] identifies the following criteria for

determining whether an employee was in the scope of his employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."[37]

---

[35] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[36] *Draper v. Olivere Paving & Constr. Co.*, 181 A.2d 565, 569 (Del. 1962).
[37] *Wilson v. Joma, Inc.*, 537 A.2d 187, 189 (Del. 1988) (citing Restatement of Agency (2nd) § 228).

"[T]he Restatement would impose liability upon the master for his servant's intended tortious harm 'if the act was not unexpectable in view of the duties of the servant.'"[38] The dual-purpose rule holds that "conduct of an employee, although done in part to serve the purposes of the servant or a third person, may be within the scope of employment if the employer's business actuates the employee to any appreciable extent."[39] Further, if an employee is acting outside the scope of employment, an employer may still be held liable under § 219. Plaintiffs rely on §§ 219(c) and (d). Under these sections an employer may be held liable if "(c) the conduct violated a non-delegable duty of the master, or (d) the servant purported to act or to speak on behalf of the principal . . . or he was aided in accomplishing the tort by the existence of agency relationship."[40]

8.      Even viewing the facts in the light most favorable to Plaintiffs, assault is not the type of conduct Defendants Coverdale, Talton, and Gmar were employed to perform. While myriad responsibilities abound in food service for both managers and other employees, leaving the place of work to assault third parties for personal vendettas is not one of them. Therefore, Defendants Coverdale, Talton, and Gmar's conduct was not committed in furtherance of the business, and the facts do not

---

[38] *Id.* (citing Restatement of Agency (2nd), § 245).
[39] *Wilson*, 537 A.2d at 189 (citing *Best Steel Bldgs., Inc. v. Hardin*, Tex. Civ. App., 553 S.W.2D 122, 128 (1977)).
[40] Restatement of Agency (2nd), § 219.

10

remotely suggest that the assault on Plaintiffs was expectable in view of the duties of "Charley's Steaks" employees. While Plaintiffs assert that Defendant Gmar was employed to supervise employees, his supervision is in furtherance of the business within the time and space constraints of "Charley's Steaks." The record demonstrates that Defendants Coverdale, Talton, and Gmar left the premises of "Charley's Steaks" and went outside the Christiana Mall to the parking lot to engage in conduct completely outside the scope of their employment. No facts or evidence have been presented to show that Defendants Coverdale, Talton, and Gmar assaulted Plaintiffs with any purpose, even in part, to serve "Charley's Steaks" or Moving Defendants. The business of "Charley's Steaks" is to make and sell steak sandwiches and Defendants Gmar, Coverdale and Talton were employed for that purpose. It is decidedly not the business of "Charley's Steaks" to engage in extracurricular domestic dispute altercations and those defendants were not employed for that purpose.[41] Thus, the individual Defendants were not acting within the scope of employment under § 228.

---

[41] The Court is not persuaded that Defendant Gmar's answers to the complaint affirming that he was acting in the scope of his employment at all relevant times create a genuine issue of material fact. Court is not confident *pro se* Defendant Gmar submitted his answers intending to impose vicarious liability on Moving Defendants. Moreover, his narrative answer to the specific claim against him belies the contention that he was acting within the scope of his employment. That narrative answer is consistent with all the other record evidence that the altercation was a domestic dispute and had nothing to do with the business of "Charley's Steaks."

9.	Under Restatement (Second) of Agency § 219, liability may be imposed if the assault violated a non-delegable duty of the master to Plaintiffs, or if Defendants Gmar, Coverdale, and Talton purported to act or speak on behalf of "Charley's Steaks." Plaintiffs rely on *Doe v. Bicking*[42] for the proposition that Defendants had a non-delegable duty to Plaintiffs as business invitees. In that case, Doe alleged inappropriate sexual contact with children that the business should have known might occur and should have prevented from happening. The Court in *Doe* specifically noted that the business owed a non-delegable duty to safeguard its business invitees from harm *while they were in the business*.[43] The uncontroverted evidence is that the physical altercation occurred outside in the Christiana Mall parking lot, not in or near the business of Moving Defendants. Further, under § 219(2)(d), the appropriate inquiry is whether "because of the imprimatur of authority conferred on the tortfeasor under the particular facts of the case, he or she has coercive power over the alleged victim."[44] No evidence suggests that the authority of Defendants Gmar, Coverdale, or Talton as employees of Charley's Steaks resulted

---

Finally, if the Court were to accept a party's answer to a complaint as establishing a genuine issue of material fact, summary judgment would be next to impossible.
[42] *Doe v. Bicking*, No. S14C-05-026 CAK, 2020 WL 374677 (Del. Super. Ct. Jan. 22, 2020).
[43] *Doe*, 2020 WL 374677, at *11 (emphasis added).
[44] *Doe*, 2020 WL 374677, at *12.

in coercive power over Plaintiffs. Therefore, Moving Defendants have no vicarious liability for the actions of Defendants Gmar, Coverdale, and Talton.

8. The Court turns next to the claim for negligent hiring and supervision. Such negligence would result in direct liability for Moving Defendants "where the employer is negligent . . . in the employment of improper persons involving the risk of harm to others or in the supervision of the employee's activities."[45] However, employment or supervision is not enough, by itself, to render direct liability. In addition, "[t]he direct negligence claims require that the employer be on notice. 'The deciding factor is whether the employer had or should have had knowledge of the necessity to exercise control over its employee.'"[46] "[T]here must be a causal relationship between (1) the particular quality or characteristic of the employee that rendered him or her unfit for the job, and of which the employer knew or should have known, and (2) the injury suffered by the plaintiff."[47] Viewing the evidence in the light most favorable to Plaintiffs, there is no evidence that Moving Defendants were on notice that Defendants' Gmar, Talton, and Coverdale presented any risk of

---

[45] *Fanean v. Rite Aid Corp. of Del., Inc.*, 984 A.2d 812, 825-26 (Del. Super. Ct. Dec. 3, 2009) (citing *Simms v. Christina School District*, 2004 WL 344015, at *8 (Del. Super. Ct. Jan. 30, 2004)).

[46] *Fanean*, 984 A.2d at 826 (quoting *Matthews v. Booth*, 2008 WL 2154391 (Del. Super. Ct. May 22, 2008); *accord Hitchens v. Cannon & Cannon, Inc.*, 1988 WL 130414 (Del. Super. Ct. Nov. 21, 1988)).

[47] *Fanean*, 984 A.2d at 826 (citing *Am. Jurisprudence, Proof of Facts*, 37 Am. Jur. 3d 191).

13

tortious behavior at the time Moving Defendants hired them or thereafter.[48]  Further, Plaintiffs have provided no evidence that Moving Defendants either had knowledge or should have known that they needed to control Defendants Gmar, Talton, and Coverdale at any time prior to the incident.  Therefore, there is no basis for liability on the Plaintiffs' negligent hiring and supervision claim.

9.     Premises Liability "imposes a duty only on landowners that either retain possession or create dangerous conditions before relinquishing possession."[49] "In Delaware, the imposition of a duty upon the landowner/landlord requires 'actual control' of the premises."[50]  "Control in the context of the duty owed by a landlord means the 'authority to manage, direct, superintend, restrict or regulate.'"[51] However, "a landlord who has neither possession nor control of the lease premises is not liable for injuries to third persons."[52]  While the non-possessing mall owner may possess liability for criminal acts of third parties, no similar duty exists for owners of leased premises within the mall itself.[53]  Here, there is no genuine dispute of material fact that Defendants did not own the premises—the parking lot—where

---

[48] *Fanean*, 984 A.2d at 826.
[49] *Volkswagen of Am., Inc. v. Costello*, 880 A.2d 230, 233 (Del. 2005).
[50] *Id.* (citing *Monroe Park Apts. Corp. v. Bennett*, 232 A.2d 105, 108 (1967)).
[51] *Id.* (citing *Kirby v. Ziotnick*, 278 A.2d 822, 824 (1971)).
[52] *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 694 (Del. Super. Ct. May 2, 1989) (citing Thompson, *Commentaries on the Modern Law of Real Property*, § 1241, p. 243 (1981); *Prosser and Keaton on Torts*, at 434 (5th ed. 1984)).
[53] *See Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987); *Craig*, 576 A.2d at 696.

14

the assault occurred. Plaintiffs were assaulted in the Christiana Mall parking lot, property owned, and subject to control by the Christiana Mall, not Moving Defendants. Therefore, Moving Defendants' there is no basis for liability on Plaintiffs' premises liability claim.

10. Plaintiffs' remaining claims assert a demand for punitive damages and allege that Moving Defendants were "negligent, grossly negligent, reckless, willful, and wanton."[54] Gross negligence is "an extreme departure from the ordinary standard of care."[55] "Gross negligence claims must be pleaded with particularity."[56] Here, Plaintiffs have neither plead with particularity nor alleged that Moving Defendants engaged in conduct that was an extreme departure from the ordinary standard of care. The conduct of Defendants Coverdale, Talton, and Gmar "running" into the parking lot and allegedly assaulting Plaintiffs, while arguably an extreme departure from the ordinary standard of care as to them, is not conduct imputed to Moving Defendants. It follows that if there is no evidence Moving Defendants were grossly negligent, there is also no evidence Moving Defendants were reckless or willful and wanton. Nonetheless, the Court discusses each deviation from the ordinary standard of care in turn. Recklessness "reflects a

---

[54] Pls.' Compl., D.I. 1.
[55] *Greenfield as Next Friend for Ford v. Miles*, 211 A.2d 1087, 1101 (Del. 2019) (citing *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990)).
[56] *Greenfield as Next Friend for Ford*, 211 A.2d at 1101 (citing Super. Ct. Civ. R. 9).

15

knowing disregard of a substantial and unjustifiable risk. It amounts to an 'I don't care' attitude."[57] Plaintiffs have provided no evidence that Moving Defendants performed any act so unreasonable and dangerous that Moving Defendants knew, or should have known, that harm to Plaintiffs would result.[58] Again, the conduct of Defendants Coverdale, Talton, and Gmar is not the conduct of Moving Defendants. Finally, Plaintiffs assert that Defendants Coverdale, Talton, and Gmar "running" into the parking lot and assaulting them is willful and wanton. "Wanton conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he either knows or should know that there is an imminent likelihood of harm which can result."[59] Even if the conduct of Defendants Coverdale, Talton, and Gmar may be characterized as willful and wanton, the acts of Defendants Coverdale, Talton, and Gmar were not the acts of Moving Defendants. Moving Defendants are not vicariously liable for the assault. Further, no evidence has been presented to support a claim for direct liability against Moving Defendants. Thus, there is no evidence that Moving Defendants engaged in negligent, grossly negligent, reckless, or willful and wanton conduct.

---

[57] *Bowers v. Launch Delaware, LLC*, No. N16C-07-142 WCC, 2018 WL 3618688 (Del. Super. Ct. July 25, 2018) (citing *Lynam v. Blue Diamond LLC*, 2016 WL 5793725, at *4 (Del. Super. Ct. Oct. 4, 2016)).

[58] *Lynam*, 2016 WL 5793725, at *4.

[59] *Yankanwich v. Wharton*, 460 A.2d 1326, 1331 (Del. 1983) (citing *Wagner v. Shanks*, 194 A.2d 701, 706-07 (Del. 1963); *Aastad v. Riegel*, 262 A.2d 652 (Del. Super. Ct. Feb. 4, 1970), *aff'd*, 272 A.2d 715 (Del. 1970)).

**THEREFORE**, Moving Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*

Ferris W. Wharton, J.