Phyllis P. WOODS and Albert C. Woods, Plaintiffs,

v.

PRICES CORNER SHOPPING CENTER MERCHANTS ASSOCIATION, Sears, Roebuck and Co., All Seasons Contractors, Inc., John A. Robbins Co., Inc., a/k/a John Robbins, Ltd., Jardel Co., Inc., and Center Ridge Co., an Ohio corporation, doing business as Center Ridge Co., #46, Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 10, 1987.
Decided: April 7, 1988.

Theodore F. Sandstrom, Wilmington, for plaintiffs.

Ann L. Naczi of Tybout, Redfearn, Casarino & Pell, for defendants Prices Corner Shopping Center Merchants Ass'n, Sears, Roebuck and Co., John A. Robbins Co., Inc., Jardel Co., and Center Ridge Co.

Frederick W. Iobst of Young, Conaway, Stargatt & Taylor, for defendant All Seasons Contractors, Inc.

TAYLOR, Judge.

Plaintiffs seek damages which have resulted from Phyllis P. Woods' [plaintiff] fall in the parking lot at Prices Corner Shopping Center [shopping center] on January 21, 1984. Plaintiff had gone to the parking lot to pick up a purchase and to pay her bill at the Sears store located in the shopping center.

Snow had fallen three times during the week preceding plaintiff's fall and the temperature had been 0° and 10° Fahrenheit. The entire parking lot and the roadway were covered with packed snow and ice. It did not appear that it had been removed anywhere or that salt or sand had been used. Plaintiff was walking along the roadway portion of the lot toward the Sears store when she fell.

Defendants Prices Corner Shopping Center Merchants Association, Sears, Roebuck and Co., John A. Robbins Co., Inc. a/k/a John Robbins, Ltd., Jardel Co., Inc., and Center Ridge Co. [defendants] have moved for summary judgment. Defendants contend that (1) they had no duty to take protective action; (2) plaintiff was contributorily negligent and (3) plaintiff is barred by assumption of risk.

I

■ It is undisputed that plaintiff was on the parking lot as a business invitee. *Cf. DiSabatino Bros., Inc. v. Baio*, Del. Supr., 366 A.2d 508, 510 (1976). One who conducts business owes a duty to those who come to his place to do business to exercise due care to keep the property in a reasonably safe condition as to any condition which is known to the business operator or which should have been known in the

exercise of reasonable care or diligence. *Howard v. Food Fair Stores, New Castle, Inc.*, Del.Supr., 201 A.2d 638 (1964). This test allows the operator a reasonable opportunity to correct the condition after discovery or the time when it reasonably should have been discovered. However, it does require reasonable diligence by the business operator. *Wilson v. Derrickson*, Del.Supr., 175 A.2d 400 (1961).

■ Under the facts of this case, the snow and ice had accumulated over a period of days and it has not been indicated that additional snow or ice had been added shortly before the fall. Therefore, the duty of defendants is not negated by the lack of reasonable opportunity to make the area reasonably safe. Under the principles stated above, defendants had a duty to keep the premises in reasonably safe condition.

Defendants contend that the duty to keep the premises in a reasonably safe condition is negated by the customer's awareness of the unsafe nature of the premises. Defendants argue that because of the obviousness of the hazards associated with the accumulation of ice and snow and the plaintiff's own testimony that she was aware of the dangerous condition of the parking lot, they had no duty to warn of the danger, and had no duty to make the lot safe for walking. In support of this assertion, defendants rely upon *DiSabatino Bros., Inc. v. Baio*, Del.Supr., 366 A.2d 508, 510 (1976); *Hamm v. Ramunno*, Del. Supr., 281 A.2d 601, 603 (1971) and *Robelen Piano Co. v. DiFonzo*, Del.Supr., 169 A.2d 240 (1961). These cases are not directly on point as they involved a different type of hazard than that which is at issue in this case—the natural accumulation of ice and snow.

The scope of the landowner or occupier's [1] duty to protect invitees from natural

---

1. The Court notes that several defendants may have differing relationships to the ownership and occupancy of the shopping center. These motions have not differentiated between these relationships since they proceeded on the proposition that plaintiffs are barred from recovery as to all defendants having ownership or occupancy status. Accordingly, this decision does not address differences in liability which may exist by virtue of such differing relationships.

accumulations of ice and snow is the subject of a split of authority among the various state jurisdictions. *Prosser and Keeton on Torts*, § 61 at 427 (5th Ed.). One view, the so-called "Massachusetts Rule", imposes no duty on the landowner or occupier to remove or take other steps to protect tenants or business invitees from the dangers associated with natural accumulations of ice and snow. This approach traces its origins back to the case of *Woods v. Naumkeag Steam Cotton Co.*, Mass.Super., 134 Mass. 357 (1883), which held that a lessor of apartment-style residential premises had no duty to remove natural accumulations of ice and snow from the common approaches to the tenement. This approach still persists in a number of jurisdictions, and has been recently applied to cases in which the plaintiff was not a tenant of the defendant but was invited to transact some business with the owner or occupier of the premises. *See Sherman v. Platte County*, Wyo.Supr., 642 P.2d 787 (1982); *Brandert v. Scottsbluff Nat. Bank & Trust Co.*, 194 Neb. 777, 235 N.W.2d 864 (1975); *Smalling v. LaSalle Nat. Bank of Chicago*, 104 Ill.App.3d 894, 60 Ill.Dec. 671, 433 N.E.2d 713 (1982). The rationale underlying the modern application of the "Massachusetts Rule" is that the landowner or occupier has no duty to protect or warn invitees from known or obvious conditions not caused or created by the landowner or occupier. *Sherman*, 642 P.2d at 789; *Brandert*, 235 N.W.2d at 866.

However, a significant number of other jurisdictions apply the so-called "Connecticut Rule", which traces its origins to *Reardon v. Shimelman*, 102 Conn. 383, 128 A. 705 (1925). This approach which has been described by Prosser as the "growing view", rejects the Massachusetts "no-duty" rule and imposes an affirmative duty upon the landowner or occupier to take reasonable steps to make safe the areas under his control and held open for use by his tenants or business invitees. *Prosser and Keaton on Torts*, § 61 at 427. The rationale for this approach, as stated by Professor Prosser is that, even though the invitee had knowledge of or had been warned by the landowner or occupier of the hazardous nature of the condition, the landowner or occupier should reasonably anticipate an unreasonable risk of harm to the invitee. *Id.* This is true:

> where the condition is one, such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, when, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. *Id.*

In light of this, the "Connecticut Rule" requires the landowner or occupier to take reasonable steps to make the premises reasonably safe from the hazards associated with natural accumulations of ice and snow for the benefit of business invitees. The "Connecticut Rule" has been recently applied in *Geise v. Lee*, 84 Wash.2d 866, 529 P.2d 1054 (1975); *Quinlivan v. Great A. & P. Tea Co., Inc.*, 395 Mich. 244, 235 N.W.2d 732 (1975); *Hammond v. Allegretti*, Ind. Supr., 262 Ind. 82, 311 N.E.2d 821 (1974).

The substance of the "Connecticut Rule" approach has been adopted by the *Restatement (Second) of Torts* at § 343A. Section 343A provides:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Comment (f) to this subsection states that a landowner or occupier should expect a harm to an invitee where:

> the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk.[ ] It is not, however, conclusive in determin-

ing the duty of the possessor, or whether he has acted reasonably under the circumstances.

This provision of the *Restatement* has been applied to natural accumulations of ice and snow in *Kremer v. Carr's Food Center*, Alaska Supr., 462 P.2d 747 (1969); *Dawson v. Payless for Drugs*, 248 Or. 334, 433 P.2d 1019 (1967).

In Delaware, only two decisions have addressed this issue in the context of the landlord's duty to protect his tenants from the hazards associated with natural accumulations of ice and snow in the common walkways remaining in the landlord's control. In *Young v. Saroukos*, Del.Super., 185 A.2d 274 (1962), *aff'd.* 189 A.2d 437 (1963), the plaintiff, a tenant in a building owned by the defendant, was injured when she fell on the ice-covered entrance ramp to her apartment. After a lengthy discussion of the distinction between the "Massachusetts Rule" and the "Connecticut Rule", the Court stated "I unhesitatingly choose the 'Connecticut Rule' ", holding:

> the proper and applicable rule [is] that it is the obligation of the owner of an apartment house to exercise ordinary care to maintain the approaches and other parts of the building under his exclusive control in a reasonably safe condition for the use of tenants and their guests ... all such persons being regarded, while on the common areas, as invitees of the landlord. I regard and hold that the announced rule applies to these common areas so as to require the landlord to render safe or to remove natural or artificial accumulations of snow and ice. *Id.* at 282.

The Court added the caveat, however, that the landlord is permitted to await the end of the snowfall and may be permitted a reasonable time to clear the walkway. *Id.*

The holding in *Young* was followed by the Delaware Supreme Court in *Monroe Park Apts. Corp. v. Bennett*, Del.Supr., 232 A.2d 105 (1967). In that case, the plaintiff, again a tenant in an apartment building owned by the defendant, sought recovery for injuries sustained when she slipped and fell on natural accumulations of ice and snow in a common area of the apartment complex. *Id.* at 106. There again, the Court held that the landlord had a duty to his tenant to exercise reasonable care as to natural accumulations of ice and snow in the common areas, "so as to make such areas reasonably safe". *Id.* at 108.

It should be noted that no Delaware decision squarely addresses the question of the duty of a landowner or occupier as to obvious natural accumulations of ice and snow outside the context of the landlord-tenant relationship. *Cf. Franklin v. Salminen*, Del.Supr., 222 A.2d 261 (1966) (water on egg house floor); *Robelen*, 169 A.2d 240, (slush created by owner's application of rock salt to frozen puddle); *Howard*, 201 A.2d 638 (slippery substance on supermarket floor); *Grace v. Thomas*, Del.Super., C.A.No. 80C–AU–38, Walsh, J. (November 30, 1981) (letter op.) (patch of ice concealed beneath snow); *Hoksch v. Stratford Apts., Inc.*, Del.Super., 283 A.2d 687 (1971) (fall on cleared sidewalk); *Massey v. Worth*, Del.Super., 197 A. 673 (1938) (fall on sidewalk outside private home, homeowner owed no duty to pedestrian using sidewalk).

However, it is the opinion of this Court that the principle embodied in the "Connecticut Rule" and § 343A of the *Restatement (Second) of Torts* should apply to all persons which fall within the category of "business invitee" as that term is defined and applied by the statutory and decisional law of this state. *See Richmond v. Knowles*, Del.Super., 265 A.2d 53 (1970). Thus, an owner or occupier of land which is held open with an implied invitation to the public to come upon the land for the mutual benefit of the public and the landowner or occupier has an affirmative duty to keep the premises reasonably safe from the hazards associated with natural accumulations of ice and snow. It should further be noted that this duty cannot be discharged by merely warning the invitee of the hazardous condition, because, under the "Con-

necticut Rule" and § 343A of the *Restatement (Second) of Torts*, the invitee's awareness of the danger is not relevant to the duty of the business owner because the business owner should expect that the invitee will proceed to encounter the danger, in spite of that awareness, in reliance upon the fact that the premises are held open to the invitee by the landowner or occupier. And, insofar as the rule enunciated in *Young* and *Monroe Park Apts.* imposed an affirmative duty upon the landowner or occupier to take reasonable steps to make the premises reasonably safe from natural accumulations of ice and snow, that same duty is also imposed upon all landowners and occupiers for the protection of their business invitees.

It is a fundamental principle of Delaware law that a landowner or occupier is not an insurer of the safety of business invitees, *Wilson*, 175 A.2d 400 and *Niblett v. Pennsylvania R. Co.*, Del.Supr., 158 A.2d 580 (1960). The rule enunciated above does not impose an absolute duty to make safe the business premises from the hazards of natural accumulations of ice and snow in the nature of strict liability. What is required is that the owner or occupier of the business premises must take reasonable steps to make the premises safe for the invitees. The landowner or occupier may relieve himself from liability even though an invitee may be injured on his premises, by taking such steps to make the area reasonably safe, applying the "reasonable man" standard.

■ The imposition of strict liability for injuries to business invitees caused by natural accumulations of ice and snow is not a result mandated by either the "Connecticut Rule" or § 343A of the *Restatement. See Geise*, 529 P.2d at 1057; *Hammond*, 311 N.E.2d at 826; *Quinlivan*, 235 N.W.2d at 470. The rule set forth today is merely an application of the equally fundamental principle that a landowner or occupier owes his invitees a duty of reasonable care in keeping the premises reasonably safe for the invitee's use. *Howard*, 201 A.2d at

637; *Wilson*, 175 A.2d 400. However, the landowner and occupier is entitled to await the end of the snowfall and a reasonable time thereafter to take reasonable action to make safe the hazardous condition created by the natural accumulation of ice and snow. *Young*, 185 A.2d at 282. The reasonableness of any delay in the landowner or occupier's actions should be treated as would any question of fact.

■ In sum, the Court holds that the defendants in this case had a duty to exercise reasonable care toward the plaintiff, and it is a question for the jury as to whether the defendants' conduct was reasonable in light of the circumstances of this case. Therefore, on the question of its duty to take action to protect the plaintiff from injury, the defendants' motion for summary judgment is DENIED.

II

Defendants also contend that they are entitled to summary judgment by virtue of plaintiff's contributory negligence. In support of this contention, defendants rely upon plaintiff's statement in deposition that she noticed ice and snow on the roadway as she drove to the shopping center, that she saw the entire parking lot at the shopping center was covered with snow and ice and that the parking lot had not been treated in any way to alleviate its hazardous condition. Defendants quote the plaintiff's deposition, in which she states:

Q. What did getting out of your car very cautiously mean?

A. It meant the roads were bad.

Q. I meant the question in terms of what did that mean you did that you don't normally do. What does very cautiously mean? What steps do you take to be very cautious about exiting your car?

A. Well, if the road was clear, I would have no caution about getting out of the car and slamming the door and go walking across to the middle of the road and

walking to the sidewalk. But when the roads are not clear, you are a little bit more cautious about where you are walking to make sure that you don't fall.

Q. What does being very cautious mean?

A. I am not sure what you mean by that.

Q. I am using your term. You just got finished telling me you exited your car very cautiously.

A. Well, if you come into a parking lot and there is ice and snow on the road or say if there is snow on the road and you parked your car and you are getting out, wouldn't you be cautious about walking? I mean, I don't know how else to explain it to you.

Q. What did you do—

A. I was just trying to be careful.

Generally, the issue of contributory negligence is usually not appropriately disposed of on a motion for summary judgment. *Wootten v. Kiger*, Del.Supr., 226 A.2d 238 (1967); *Adams v. Kline*, Del.Super., 239 A.2d 230 (1968). Viewing the factual evidence most favorably to the non-moving party and drawing all reasonable inferences in favor of that party, *Moore v. Sizemore*, Del.Supr. 405 A.2d 679 (1979), the Court does not conclude that the plaintiff was contributorily negligent as a matter of law. Therefore, because the question of the plaintiff's contributory negligence is still at issue, summary judgment would be inappropriate. The defendants' motion on this ground is DENIED.

### III

Defendants referred to above and defendant All Seasons Contractors, Inc. contend that plaintiff is barred from recovery because of her assumption of the risk. This contention rests on the fact that plaintiff ventured onto the snow and ice covered road knowing that covering was on the road.

The most recent Delaware assumption of risk decision cited by the parties in *Yankanwich v. Wharton*, Del.Supr., 460 A.2d 1326 (1983). That case contains the following summarization of the law of assumption of risk:

In order for plaintiff to have assumed the risk, he must do so voluntarily and a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to avert harm to himself.

*Restatement (Second) of Torts* § 496E, which is cited in *Yankanwich*, supports the proposition that a plaintiff is not barred by assumption of risk if defendant's tortious conduct left plaintiff no reasonable alternative course by which plaintiff could have avoided injury. In this case, defendant's alleged tortious conduct was failing to provide a reasonably safe access to his place of business by taking some action to remove the ice, melt it by salt or chemicals, or reduce the slipperiness of the ice by spreading sand, gravel or other grandular material. There is no showing that plaintiff had an alternative means of reaching defendant's store in order to transact her business with defendant.

Based on the foregoing, the motions of defendants with respect to assumption of risk are DENIED.

### IV

Based on the foregoing, the motions for summary judgment in all respects are DENIED.